UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JANICE MONCRIFFE,

          MEMORANDUM OPINION
      Plaintiff,        and ORDER

    -against-          CV 09-0986 (ETB)

CLASSIQUE INTERIORS & DESIGN INC. and
PAUL DRYSDALE,

      Defendant.
------------------------------------------------------------------------X

On March 10, 2009, the plaintiff, Janice Moncriffe, filed a Complaint alleging that the defendants, Classique Interiors & Design, Inc. ("Classique" or "the corporation") and one of its owners, Paul Drysdale, discriminated against her on the basis of sex by (1) creating a hostile work environment; (2) constructively discharging her; and (3) retaliating against her for protesting the discrimination. (See Complaint at 3-4). These actions, she asserts, violate both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e et seq. ("Title VII"), and the New York Human Rights Law, N.Y. Exec. Law, §§ 290 et seq. ("NYHRL"). The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes. On April 18, 2011, the Court entered a default judgment against defendant Classique because the corporation had failed to appear through counsel, as required. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) ("[I]t is settled law that a corporation cannot appear other than by its attorney.").

A non-jury trial was conducted before me on April 18, 2011. The plaintiff testified in her own behalf. The remaining individual defendant, Paul Drysdale, the principal and owner of the

defaulting corporate defendant, although present chose not to testify but did make a statement (unsworn) in summation following the plaintiff's testimony.

## FINDINGS OF FACT

The following findings of fact are based on undisputed testimony by the plaintiff.

In April 2005, defendant Drysdale, a native of Jamaica (Tr. 34) hired plaintiff, also a native of Jamaica (Tr. 4), as a receptionist/administrative assistant at Classique. (Tr. 5-6).

Within weeks of her employment, Drysdale began telling the plaintiff sexual jokes while she was working. (Tr. 9). Several weeks later, Drysdale began unlawful contact with the plaintiff by slapping her on the buttocks. (Id.). The plaintiff verbally protested and the defendant ceased such conduct; however, it resumed a short time later. (Tr. 10).

When it resumed matters got worse. Defendant Drysdale exposed his penis to the plaintiff, inquiring whether her boyfriend's was as big as his. (Tr. 11). He also made lewd comments about plaintiff's sexual practices and genitalia. (Id.). Drysdale would also come up behind her and grab her breasts with both hands. (Tr. 10). The plaintiff resisted these advances; however, the plaintiff's paychecks thereafter began to bounce. (Id.).

In the Spring of 2006, defendant Drysdale locked the plaintiff in the building after the other employees had left for the day and physically tried to force her to have sexual intercourse with him. (Tr. 11-12). She successfully fought him off. (Tr. 12). While she threatened to contact the police, she refrained from doing so because she was in the United States unlawfully at the time and feared deportation. (Tr. 13). Moreover, the plaintiff, a single parent supporting her thirteen (13) year old

daughter and attending college part-time, feared she would be unable to find other employment due to her immigration status if she went to the police. (Id.).

In October 2007, defendant Drysdale again forcibly touched the plaintiff in the vaginal area and rubbed his penis against her buttocks. (Tr. 14). This time the police were notified and criminal charges were brought against him. (Tr. 16-17).

On October 19, 2007, defendant Drysdale was arrested on charges of forcible touching, N.Y. Penal Law § 130.52; attempted forcible touching, N.Y. Penal Law §§ 110 & 130.52; and harassment, N.Y. Penal Law § 240.26. (See Plaintiff's Ex. 1). The plaintiff was the complainant. (Tr. 19). The jury convicted the defendant on all counts.[1] (See Plaintiff's Ex. 1.)

The plaintiff testified that she never returned to work because she was afraid Drysdale would retaliate against her. (Tr. 18).

The plaintiff testified that when she left the employ of Classique in October 2007, she was making $400.00 per week. (Tr. 26). She found employment with Expression Distribution for ten (10) months at $275.00 per week. (Tr. 26-27). She left her job at Expression Distribution when she began receiving threatening anonymous phone calls on her cell phone at home. (Tr. 27). At the time of trial, the plaintiff was continuing to receive Worker's Compensation. (Id.).

The plaintiff testified that following her termination of employment at Classique she began receiving weekly group therapy at a Mount Sinai Hospital clinic for victims of sexual abuse. (Tr. 24).

She is currently under the treatment of a psychiatrist who has diagnosed her condition as

---

[1] The certificate of disposition mistakenly indicated that defendant pled guilty. There does not appear to be any dispute that he was convicted after a jury trial at which the plaintiff testified.

post-traumatic stress disorder. (Tr. 28). She is currently on medication consisting of Zoloft, Cymbalta and Ambien. (Tr. 25).

She states that she remains paranoid and fears going out in public, even though she has an order of protection that prohibits defendant Drysdale from any contact with her. (Tr. 27-28). She testified that the incidents at work detrimentally impacted her relationship with the boyfriend with whom she was residing in 2007. (Tr. 23). She testified that they broke up because she began isolating herself from her boyfriend because she felt violated by the defendant and she did not tell her boyfriend what she was undergoing at work. (Id.).

Lastly, the plaintiff reports that she is now a legal resident of the United States. (Tr. 20).

## CONCLUSIONS OF LAW

The plaintiff seeks damages under Title VII, 42 U.S.C. §§ 2000e et seq., and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, NYHRL makes it "an unlawful discriminatory practice . . . [f]or an employer . . . because of . . . sex to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Title VII and NYHRL prohibit the same conduct, and establishing an employment discrimination claim under Title VII will also establish the claim under NYHRL. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d

262 (1982) ("The elements of a successful employment discrimination claim [under Title VII and NYHRL] are virtually identical . . . ."); Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."); Tomka v. Seiler Corp., 66 F.3d 1295, 1304 n.4 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) ("New York courts require the same standard of proof for claims brought under [NYHRL] as those brought under Title VII."); Illiano v. Mineola Union Free Sch. Dist., 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) ("The elements of a hostile work environment claim under NYHRL are identical to the elements required under the equivalent federal antidiscrimination laws."). Thus, courts consistently look to federal case law when ruling on claims under NYHRL. See, e.g., Ferraro v. Kellwood Co., 440 F.3d 96, 99-103 (2d Cir. 2006).

There is a significant difference between the two statutes, however. Under Title VII, a defendant cannot be held liable in his individual capacity. See Tomka, 66 F.3d at 1313-17 ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."). NYHRL, on the other hand, allows for individual liability if the defendant supervisor has an ownership interest in the employing company, has the power to hire and fire, see Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659 (1984), or "'actually participates in the conduct giving rise to [the] discrimination.'" Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004 (quoting Tomka, 66 F.3d at 1317); see also Heinemann v. Howe & Rusling, 260 F. Supp. 2d 592, 597 (N.D.N.Y. 2003) (collecting cases for the proposition that an individual defendant may be held directly and personally liable under NYHRL).

Here, the corporation is already liable to the plaintiff under both Title VII and NYHRL by

virtue of its default. See, e.g., Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (noting that "a court accepts as true all well-pleaded allegations against a defaulting defendant for the purposes of liability," although damages must be established separately). The Title VII action against defendant Drysdale in his personal capacity, however, must be dismissed. See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 n.2 (2d Cir. 1995) ("The Title VII . . . action[] against [defendant] must be dismissed in light of our decision in Tomka v. Seiler Corp., which held that supervisory personnel may not be held individually liable under Title VII" (citation omitted).) The remaining question, then, is whether defendant Drysdale is personally liable under NYHRL.[2]

I.     Hostile Work Environment and Constructive Discharge

It is difficult to imagine a more hostile work environment than the one presented here. Forced criminal sexual conduct is the most severe type of hostile work environment and this is what the plaintiff was subjected to, in addition to the less severe conduct noted above. A work environment is actionably discriminatory "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citations and internal quotation marks omitted). "This severe or pervasive standard has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work

---

[2]Because, as noted above, Title VII and NYHRL prohibit the same conduct, the Court will look primarily to Title VII cases in examining plaintiff's NYHRL claim. See, e.g., Ferraro, 440 F.3d at 99-103.

environment, and the victim must also subjectively perceive that environment to be abusive." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 79 (2d Cir. 2010) (internal quotation marks and citation omitted). In making this determination, courts should "review the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23). In addition, a plaintiff must establish that the offending conduct "occurred because of the plaintiff's sex." McGullam, 609 F.3d at 79 n.6 (internal quotation marks and citation omitted).

A hostile work environment will result in constructive discharge when the "employer deliberately and discriminatorily create[s] work conditions 'so intolerable that a reasonable person in the employee's position would [feel] compelled to resign.'" Ferraro, 440 F.3d at 101 (quoting Pa. State Police v. Suders, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)).

The plaintiff has established that she was subjected to a hostile sexual work environment. She endured offensive sexual contact--some criminal in nature--at the hands of defendant Drysdale. Such conduct persisted over two and one-half (2½) years--from April 2005 to October 2007--and consisted not only of unwelcome and unlawful verbal conduct, but also unwelcome and unlawful physical contact, including numerous sexual advances. (See Tr. 9-15). This conduct created an objectively hostile environment. See, e.g., Cruz v. Coach Stores, 202 F.3d 560, 571-72 (2d Cir. 2000) (holding that evidence of repeated sexualized remarks and physically threatening behavior were sufficient for a fact-finder reasonably to find a hostile work environment); Tomka, 66 F.3d at 1305 ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's

employment and clearly creates an abusive work environment . . . .").[3] Plaintiff's testimony also makes clear that she perceived the conduct to be abusive, as she verbally and physically resisted the defendant's advances. (Tr. 10, 12, 14-15). The plaintiff has thus established that the discrimination was severe and pervasive, altered the conditions of her employment and created an abusive sexual work environment.

The plaintiff has also established that the discrimination occurred because of the plaintiff's sex. Defendant Drysdale's conduct was sexual in nature, and included touching the plaintiff's breasts and genitalia and asking her to compare the size of his penis to the size of her boyfriend's. (Tr. 10-11, 14). There is no question that the discrimination was because of the plaintiff's sex: "[T]he challenged conduct . . . involves explicit [and] implicit proposals of sexual activity; it is reasonable [on these facts] to assume those proposals would not have been made" if the plaintiff were not female. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998).

Finally, defendant Drysdale is an "employer" under NYHRL both because he had an ownership interest in the corporation and because he indisputably had the power to hire and fire the plaintiff. (Tr. 6); see Patrowich, 63 N.Y.2d at 542; see also Tomka, 66 F.3d at 1317 (discussing Patrowich). Additionally, he qualifies as an employer under NYHRL because he actively participated in the harassment. See Feingold, 366 F.3d at 157. Thus, defendant Drysdale is individually liable on the plaintiff's hostile work environment claim.

Similarly, defendant Drysdale is liable for the plaintiff's constructive discharge. The

---

[3] Although defendant Drysdale was neither charged with nor prosecuted for attempted rape, the plaintiff testified, without objection or rebuttal from the defendant, that defendant Drysdale attempted to physically force her to have sex with him. (Tr. 11-12).

harassment of the plaintiff was deliberate and egregious, culminating in activity for which defendant Drysdale was criminally prosecuted. On these facts, it is clear that "a reasonable person in the [plaintiff's] position would have felt compelled to resign." Ferraro, 440 F.3d at 101.

II.   Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that "'(1) she was engaged in an activity protected under [NYHRL]; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003) (quoting Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000)). The plaintiff's unrebutted testimony establishes her retaliation claim.

First, the plaintiff engaged in protected activity of which defendant Drysdale was aware. "'[P]rotected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz, 202 F.3d at 566. The term encompasses not only formal opposition, but also informal opposition, such as complaining to management. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). Here, the plaintiff had a meeting with defendant Drysdale and complained about his offensive touching. (Tr. 10). That complaint was protected activity, and the plaintiff made defendant Drysdale aware that his conduct was unwelcome and must stop.

Moreover, defendant Drysdale subsequently took adverse action against the plaintiff. She testified that after she complained, the harassment worsened. (Tr. 11). Defendant Drysdale began

making comments about her genitalia and sexual practices and ultimately attempted to force her to have sexual relations with him. (Tr. 11-12). Additionally, after she protested, her paychecks began to bounce. (Tr. 10, 16). There is a causal nexus between protest and the increased harassment and other adverse employment action involving her bounced checks. See Sumner, 899 F.2d at 209 ("The causal connection between the protected activity and the adverse employment action can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment . . . ."); Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 436 (E.D.N.Y 2009 ("Regarding the causal connection prong of the retaliation inquiry, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence.").

The plaintiff has therefore established her retaliation claim.[4] Defendant Drysdale is also individually liable on this claim under NYHRL.

DAMAGES

Based on the foregoing, the court awards damages to the plaintiff, Janice Moncriffe, jointly and severally against the defaulting corporate defendant, Classique Interiors & Design, Inc., and the

---

[4]The Plaintiff also, of course, engaged in protected activity when she reported defendant Drysdale to the police. (Tr. 16-18). However, there is no evidence that defendant Drysdale took adverse employment action against her as a result of this. Rather, she merely notes that Drysdale was arrested two days after she reported him, and the plaintiff did not return to work after his arrest. (Tr. 18). Similarly, although the plaintiff's report to a representative of the "labor board" (presumably the New York State Department of Labor) may have constituted protected activity (Tr. 15), there is no evidence that Drysdale was aware of the report.

individual defendant, Paul Drysdale, as follows:

| | | | |
|---|---|---|---|
| 1) | Emotional distress | | $500,000 |
| 2) | Punitive damages | | $500,000 |
| 3) | Attorney's fees | | In an amount to be determined upon further submission by plaintiff's counsel. This application shall be filed on notice to all parties within fourteen (14) days. |

The Title VII claim against defendant Paul Drysdale in his individual capacity is hereby dismissed.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff, Janice Moncriffe, in the sum of $500,000 for emotional distress and $500,000 for punitive damages.

**SO ORDERED:**

Dated: Central Islip, New York
      June 2, 2011

                              /s/ E. Thomas Boyle
                              E. THOMAS BOYLE
                              United States Magistrate Judge